IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | | |
|---|---|---|
| Joseph Dominick Urato, # 349299, | ) | |
| | ) | Civil Action No. 6:15-1062-TMC-KFM |
| Petitioner, | ) | |
| | ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. | ) | |
| | ) | |
| Warden Robert Stevenson, III, | ) | |
| | ) | |
| Respondent. | ) | |

The petitioner, a state prisoner proceeding *pro se*, seeks habeas corpus relief pursuant to Title 28, United States Code, Section 2254.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c) (D.S.C.), this magistrate judge is authorized to review post-trial petitions for relief and submit findings and recommendations to the district court.

**BACKGROUND**

The petitioner is currently incarcerated at the Lieber Correctional Institution in the South Carolina Department of Corrections ("SCDC"). He was indicted by the Greenville County Grand Jury in July 2011 for bank robbery (Indictment No. 2010-GS-23-7945) and conspiracy (Indictment No. 2010-GS-23-7909) (app. 69-70, 72-73). The petitioner was also indicted in December 2011 for bank robbery (Indictment No. 2010-GS-23-7946)[1] (app. 76-77). On January 17, 2012, the petitioner pled guilty before the

---

[1]The guilty plea record reveals that the petitioner was originally indicted for two counts of armed robbery, but one of the indictments listed the name of the bank incorrectly
(continued...)

Honorable Edward Miller (app. 1–18, 71, 75, 79).  Attorney Randy Chambers represented the petitioner at the plea hearing.  Assistant Solicitor Jon Gregory represented the State (app. 1-17).[2]  Based on the plea colloquy, Judge Miller accepted the plea, finding a substantial factual basis for the plea and that it was freely, voluntarily, and intelligently made with the advice of counsel (app. 11–12).  Judge Miller then sentenced the petitioner to concurrent terms of 30 years suspended on service of 18 years and three years of probation for one count of bank robbery,[3] 30 years suspended during probation for the second count of bank robbery, and five years for conspiracy (app. 16–17).  The petitioner did not file a direct appeal.

***PCR***

The petitioner filed an application for post–conviction relief ("PCR") on May 31, 2012 (app. 19-26; doc. 17-3)[4] raising the following claims:

> 10.   State concisely the grounds on which you base your allegation that you are being held in custody unlawfully:
>
> (a)  Lawyer advised me that if I plead I would get a 10 yrs non violent sentence.
>
> (b) Probation officer said it would be a 51% but SCDC has it as non violent 85%.

---

[1](...continued)
as Wachovia Bank instead of First Savers Bank (doc. 17-2).  An amended indictment was submitted correcting the error and was true-billed in the December 2011 term.  During the petitioner's guilty plea, the plea court deemed the amended indictment as the original and made a notation on the indictment (app. 8-11, 76-77).

[2]The first page of the plea transcript has the names of the Assistant Solicitor and defense counsel switched (app. 1).  The plea colloquy, however, reveals that Mr. Chambers represented the petitioner, and the Assistant Solicitor was Mr. Gregory (app. 7-17).  Additionally, the petitioner states in response in opposition to the motion for summary judgment that Randy Chambers was his plea attorney (doc. 29).

[3]Indictment No. 2010-GS-23-7946.

[4]The respondent has included a separate copy of the PCR application, as the date stamp on the copy in the PCR appendix is illegible.

(c)  Never entered bank that I'm charged with.  Never saw or shown indictment. I've been charged with wrong bank!!!

11.  State concisely and in the same order the facts which support each of the grounds set out in (10):
(a)  *Padilla v. Kentucky / Chaidez v. U.S.*

(App. 21, 62).

On August 31, 2012, Assistant Deputy Attorney General Karen C. Ratigan filed the State's return (app. 27–32).  On August 28, 2013, an evidentiary hearing was convened before the Honorable Robin B. Stilwell (app. 33-56).  The petitioner was present and represented by Susannah Ross at the hearing (app. 33).  At the conclusion of the hearing, Judge Stilwell denied the petition (app. 52-55).  By order filed October 10, 2013, Judge Stilwell memorialized the denial and dismissal *with prejudice* of the petitioner's PCR application (app. 61–68).

### PCR Appeal

PCR counsel filed a notice of intent to appeal on November 1, 2013 (doc. 17-4).  On June 19, 2014, LaNelle Cantey Durant, Appellate Defender with the South Carolina Commission on Indigent Defense, Division of Appellate Defense, filed a *Johnson* petition for writ of certiorari asking, "Did the PCR court err in failing to find plea counsel ineffective for not insuring that petitioner's guilty plea was entered freely, voluntarily and knowingly?" (doc. 17-5 at 3).  Along with the *Johnson* petition, PCR appellate counsel filed a petition to be relieved as counsel. (doc. 17-5 at 9).

In a document dated July 15, 2014, the petitioner submitted a *pro se* motion to supplement the record in his PCR appeal pursuant to Rule 212(b), SCACR (doc. 17-6).  On August 7, 2014, the Supreme Court of South Carolina denied the motion (doc. 17-7).

On July 23, 2014, the petitioner submitted a *pro se Johnson* petition raising the following issues:

I. Did the PCR Court err in failing to find Applicant was denied the effective assistance of counsel guaranteed by the Sixth Amendment of the United States Constitution where counsel failed to secure enforcement of the 10 year plea agreement?

II. Did the PCR Court err in failing to find Applicant was denied the effective assistance of counsel guaranteed by the Sixth Amendment of the United States Constitution where counsel failed to challenge the elements of the Indictment as to whether the offense was committed?

III. Did the PCR Court err in failing to find Applicant was denied the effective assistance of counsel guaranteed by the Sixth Amendment of the United States Constitution where counsel failed to inform Applicant of his right to appeal?

(Doc. 17-8 at 3).

On October 8, 2014, the South Carolina Supreme Court denied the petition (doc. 17-9). The remittitur was issued on October 24, 2014 (doc. 17-10). The Greenville County Public Index reflects that the remittitur was filed in the Clerk's Office on October 28, 2014 (doc. 17-11).

## FEDERAL PETITION

On March 6, 2015, the petitioner filed his § 2254 petition (doc. 1). On June 1, 2015, the respondent filed a motion for summary judgment (doc. 16). By order filed on June 2, 2015, pursuant to *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975), the petitioner was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion (doc. 18). After being granted two extensions of time, the petitioner filed a response in opposition to the motion for summary judgment on August 19, 2015 (doc. 29).

In his federal petition, the petitioner makes the following claim:

Ground One: Ineffective assistance of counsel. Never entered that I'm charged with: Never saw or shown indictment.

Supporting Facts: The lower courts decision was based on unreasonable determination of facts. The indictment is insufficient because false and misleading statements was presented to the grand jury.

4

(Doc. 1 at 5 (errors in original)).

## APPLICABLE LAW AND ANALYSIS

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non–movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non–moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non–moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Commc's Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248.

5

Before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. 28 U.S.C. § 2254(b)(1)(A). In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2) by filing an application for PCR. State law requires that all grounds be stated in the direct appeal or PCR application. Rule 203, SCACR; S.C. Code Ann. §§ 17–27–10,–90; *Blakeley v. Rabon*, 221 S.E.2d 767, 770 (S.C.1976). If the PCR court fails to address a claim as is required by South Carolina Code § 17–27–80, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP to preserve the issue for appellate review. *Marlar v. State*, 653 S.E.2d 266, 267 (S.C. 2007).[5]

The South Carolina Supreme Court has held that the presentation of claims to the state court of appeals without more is sufficient to exhaust state remedies for federal habeas corpus review. *State v. McKennedy*, 559 S.E.2d 850 (S.C. 2002); *see also In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases*, 471 S.E.2d 454 (S.C. 1990). In *McKennedy*, the South Carolina Supreme Court specifically held that *In re Exhaustion* had placed discretionary review by the South Carolina Supreme Court "outside of South Carolina's ordinary appellate review procedure pursuant to *O'Sullivan [v. Boerckel*, 526 U.S. 838 (1999)]." 559 S.E.2d at 854. Accordingly, a claim would not be procedurally barred from review in this court for failure to pursue review in the South Carolina Supreme Court after an adverse decision in the South Carolina Court of Appeals, either after a direct appeal or after pursuing relief in a PCR petition.

A habeas petitioner must first present his claim to the court in a manner in which it may be reviewed on the merits. *Harris v. Reed*, 489 U.S. 255, 262 (1989); *Coleman v. Thompson*, 501 U.S. 722, 735 (1991). It is well settled in South Carolina that "[i]ssues

---

[5]In *Bostick v. Stevenson*, 589 F.3d 160, 162–65 (4th Cir. 2009), the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007, decision in *Marlar*, South Carolina courts had not been uniformly and strictly enforcing the failure to file a motion pursuant to Rule 59(e), SCRCP, as a procedural bar. Accordingly, for matters in which there was a PCR ruling prior to November 5, 2007, the court will not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

not raised and ruled upon in the trial court will not be considered on appeal." *State v. Dunbar*, 587 S.E.2d 691, 693-94 (S.C. 2003). Moreover, it is not enough that the argument presented stems from the same factual scenario; rather, the legal argument must be the same as the argument presented below. *See, e.g., State v. Haselden*, 577 S.E.2d 445, 448 (S.C. 2003) (finding differing ground for objection did not preserve issue presented for review: defendant's objection on relevancy did not preserve argument the evidence was improper character evidence); *State v. Caldwell*, 662 S.E.2d 474, 482 (S.C. Ct. App. 2008) ("Because the argument raised on appeal does not appear to have been specifically raised below, it may not be preserved on appeal.").

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner who seeks habeas corpus relief on an issue after he failed to raise that issue at the appropriate time in state court and has no further means of bringing that issue before the state courts. In such a situation, the person has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. Procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings if the state has procedural rules that bar its courts from considering claims not raised in a timely fashion.

If a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. As the Supreme Court has explained:

> [State procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed v. Ross*, 468 U.S. 1, 10–11 (1984).

7

"[A] federal court ordinarily may not consider claims that a petitioner failed to raise at the time and in the manner required under state law unless 'the prisoner demonstrates cause for the default and prejudice from the asserted error.'" *Teleguz v. Pearson*, 689 F.3d 322, 327 (4th Cir. 2012) (quoting *House v. Bell*, 547 U.S. 518, 536 (2006)). To show cause, a petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule," *Murray v. Carrier*, 477 U.S. 478, 488 (1986), or that "the factual or legal basis for the claim was not reasonably available to the claimant at the time of the state proceeding." *Roach v. Angelone*, 176 F.3d 210, 222 (4th Cir. 1999). "Alternatively, Petitioner may prove that failure to consider the claims will result in a fundamental miscarriage of justice." *McCarver v. Lee*, 221 F.3d 583, 588 (4th Cir. 2000) (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)). A fundamental miscarriage of justice equates to the conviction of someone who is actually innocent. However, "actual innocence" requires "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998).

In *Martinez v. Ryan*, 132 S.Ct. 1309, 1315 (2012), the United States Supreme Court carved out a "narrow exception" that modified the "unqualified statement in *Coleman* [*v. Thompson*, 501 U.S. 722, 754-55 (1991)] that an attorney's ignorance or inadvertence in a postconviction proceeding does not qualify as cause to excuse a procedural default." In *Martinez*, the Court

> read *Coleman* as containing an exception, allowing a federal habeas court to find "cause," thereby excusing a defendant's procedural default, where (1) the claim of "ineffective assistance of trial counsel" was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" review proceeding in respect to the "ineffective-assistance-of-trial-counsel claim"; and (4) state law requires that an "ineffective assistance of trial counsel [claim] ... be raised in an initial-review collateral proceeding."

*Trevino v. Thaler*, 133 S.Ct. 1911, 1918 (2013) (quoting *Martinez*, 132 S. Ct. at 1318-19, 1320-21). The Court in *Martinez* also noted:

8

> When faced with the question whether there is cause for an apparent default, a State may answer that the ineffective-assistance-of-trial-counsel claim is insubstantial, i.e., it does not have any merit or that it is wholly without factual support, or that the attorney in the initial-review collateral proceeding did not perform below constitutional standards.

132 S. Ct. at 1319.

Title 28, United States Code, Section 2254(d) and (e) provides in pertinent part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
>
> (e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(d), (e).

The Fourth Circuit Court of Appeals has stated as follows regarding the standard of review in cases, like the instant case, that are governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"):

> For a claim that was adjudicated on the merits in state court proceedings, this Court will not issue a writ of habeas corpus under the AEDPA unless (a) the state court decision is in "square conflict" with Supreme Court precedent that is controlling as to law and fact or (b) if no such controlling decision exists, "the state court's resolution of a question of

9

> pure law rests upon an objectively unreasonable derivation of legal principles from the relevant [S]upreme [C]ourt precedents, or if its decision rests upon an objectively unreasonable application of established principles to new facts." *Green v. French*, 143 F.3d 865, 870 (4th Cir. 1998). "In other words, habeas relief is authorized only when the state courts have decided the question by interpreting or applying the relevant precedent in a manner that reasonable jurists would all agree is unreasonable." *Id.* When a petitioner has properly presented a claim to the state court but the state court has not adjudicated the claim on the merits, however, our review of questions of law and mixed questions of law and fact is *de novo*. *See Jones v. Jones*, 163 F.3d 285, 299-300 (5th Cir.1998) (applying pre-AEDPA *de novo* standard of review to claims of ineffective assistance of counsel that were properly raised, but not adjudicated on merits in state court).

*Weeks v. Angelone*, 176 F.3d 249, 257–58 (4th Cir. 1999).

### Amendment of Indictment to Change Name of Bank

The petitioner's single ground for relief alleges ineffective assistance of counsel. The petitioner specifically alleges: "Never entered [bank] that I'm charged with: Never saw or shown indictment" (doc. 1 at 5). To the extent that this ground overlaps with the allegation that plea counsel did not properly advise the petitioner regarding the amendment of the indictment to change the name of the bank, Ground One is preserved because that issue was addressed by the PCR court (app. 65-66) and was available for review in the *Johnson* appeal. *See Bailey v. State*, 709 S.E.2d 671, 676–77 (2011) (finding an issue "raised to and ruled upon by the PCR judge" preserved for appellate review). This portion of Ground One fails on the merits as set forth below.

To be entitled to relief on an ineffective assistance claim, the petitioner had to have shown in state court that (1) trial counsel's performance fell below an objective standard of reasonableness, and (2) a reasonable probability exists that but for counsel's error, the result of that proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–94 (1984). *Strickland* does not guarantee perfect representation, only a "'reasonably competent attorney.'" *Id.* at 687 (quoting *McMann v. Richardson*, 397 U. S.

10

759, 770 (1970)).   There is a strong presumption that counsel rendered adequate assistance and exercised reasonable professional judgment in making all significant decisions in the case. *Id.* at 690.   "In the context of a guilty plea, the petitioner must demonstrate that his trial counsel's performance fell below an objective standard of reasonableness and 'that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Burket v. Angelone*, 208 F.3d 172, 189 (4th Cir. 2000) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

The review of ineffective assistance of counsel claims in federal habeas is not simply a new review of the merits; rather, habeas review is centered upon whether the state court decision was reasonable. *See* 28 U.S.C. § 2254(d).  Additionally, each step in the review process requires deference—deference to counsel and deference to the state court that previously reviewed counsel's actions:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult.   The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so.   The *Strickland* standard is a general one, so the range of reasonable applications is substantial.   Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).   When § 2254(d) applies, the question is not whether counsel's actions were reasonable.   The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Harrington v. Richter*, 562 U.S. 86, 104 (2011) (internal citations omitted).

At the petitioner's guilty plea, the plea court went through the indictments against the petitioner and the maximum possible punishment for each indictment (app. 4-5). The plea court identified the banks that the petitioner was charged with entering with intent to steal as a Wachovia Bank and Arthur State Bank (app. at 4-5).  The petitioner affirmed that he understood his rights and that he waived those rights to plead guilty (app. 6).  When

11

asked by the plea court if he was satisfied with his attorney's representation, the petitioner

responded, "Absolutely" (app. 7).

      The prosecutor gave the following recitation of the facts against the petitioner

that the State was prepared to prove if the petitioner went to trial:

> On July 27, 2010, the co-defendant, Deborah Bassler, walked into an Arthur State Bank in Greenville County.
>
> She pretended to use the bathroom to make sure the bank was clear. After she left, this defendant entered the bank wearing a mask and a blue bandana around his mouth. He jumped over the counter, was screaming the whole time, and said that no one would get hurt and demanded money.
>
> The defendant got approximately $3,400 in cash from the teller and left the bank.
>
> Both the co-defendant and Bassler were arrested on July 30, 2010, after Bassler entered the First Saver's Bank on Augusta Road. The teller there recognized Bassler as the co-defendant in the Arthur State Bank robbery, and she tripped a silent alarm.
>
> According to Bassler's testimony, she went in the First Savers Bank to scope it out just like she did at the Arthur State Bank. She went back to the truck with this defendant, they started gearing up to rob the bank, and that's when the police arrived and apprehended both suspects.
>
> She gave a complete statement implicating herself and the defendant and she was deferred sentencing back in November. She was going to testify today.

(App. 7–8).

      The plea court pointed out that he had one indictment stating the petitioner

had entered Arthur State Bank and another stating the petitioner had entered a Wachovia

Bank (app. 8). Plea counsel informed the court that the indictment as to the Wachovia

Bank had been corrected to reflect the bank was a First Savers Bank. Plea counsel further

indicated that he had seen the amended indictment (app. 8-9). The assistant solicitor then

gave the plea court the amended indictment (app. 10). The plea court asked the petitioner

12

if he had robbed a Wachovia Bank, and the petitioner responded, "No" (app. 10).  The plea court then read the charges on the amended indictment and gave the petitioner an opportunity change his previous answers with respect to the amended indictment (app. 10). The petitioner declined to do so (app. 11).  When the plea court offered the petitioner a moment to confer with counsel about the amendment, plea counsel informed the court that they had already spoken about the amended indictment (app. 11).  The plea court and the petitioner then had the following exchange about the amended indictment:

> THE COURT: I'm going to, if you have no objection and this is entirely up to you Mr. Urato, I'm going to mark this indictment, this copy, as a deemed original. Is that agreeable with you?
>
> DEFENDANT URATO: Yes, Your Honor.
>
> THE COURT: I'm going to scratch through this typo stamped number up there. Any problem with that?
>
> DEFENDANT URATO: No, Your Honor.
>
> THE COURT: Okay. Is everything he told me about the facts of the case correct?
>
> DEFENDANT URATO: Yes, Your Honor.

(App. 11).  The plea court then accepted the petitioner's guilty plea (app. 11–12).  The indictment provided in the PCR appendix reflects the changes made by Judge Miller (app. 76–77).

At the PCR hearing, the petitioner testified that he believed he was going to get a ten-year sentence for his crimes (app.37-39).  When asked if he had any issues regarding his indictment, the petitioner responded:

> Yes. I wasn't fully aware or understood what they meant when they tried to—when they said they deemed the—the Indictment that they had the original Indictment. I was under the impression I was getting the ten years. So, when they asked me did I have a problem with it, I believe he asked me twice.
>
> I said, No, I don't have a problem with it.

> Because, I mean, I was expecting to get the 10 years. So, I thought we were just going through the formal motions of the court proceedings. But apparently that wasn't so. But I've come to—what I don't understand as what that is, it didn't go in front of the Grand Jury. How can I plead to an Indictment that didn't go in front of the Grand Jury? And no one stopped it. I mean, I'm not a lawyer, I don't know these things. I mean, someone should have at least briefed me or let me know what I was doing.

(App. 40-41).  The petitioner further explained:

> From what I understand, the problem with the Indictment originally was that they were saying it was a Wachovia Bank. And that's what I thought they were fixing. Because I kept saying, I have nothing to do with a Wachovia Bank. Then they switched it to—it was attempted robbery, originally. It was never bank robbery, I never entered the bank or even enter that bank. So, I was saying I didn't rob that bank or even enter that bank. And they said, Well, they switched it to the First Savers Bank. Because apparently while me and my co-defendant were separated, she had went into the First Savers Bank. Which I wasn't aware of at the time. And that would have came out if we went to trial. Because I would have testified to that. But what happened was they changed it from attempted robbery to bank robbery. I never entered that bank, I never robbed that bank.
>
> So, my whole grief with this whole thing is how am I in SCDC for robbing a bank that was never robbed? If we took the bank tellers or the bank president and they got on the stand right now and asked them if their bank was ever robbed, they would say no. And that would be the truth because it was never robbed. So how am I being charged with a bank that was never charged?

(App. 41–42).

Plea counsel testified at the PCR hearing that he never had a conversation with the petitioner in which he told him there was a deal for a ten-year sentence (app. 47). He testified that he thought the State had a very good case, and if the petitioner went to trial, plea counsel believed the petitioner would be convicted (app. 47-48).  Plea counsel recalled that he had seen the amended indictment prior to the plea hearing and that the indictment appeared to be correct (app. 49).  Counsel stated that he did not think he and

the petitioner had any discussion about the amended indictment prior to the plea. He did not remember the petitioner showing any hesitance about going forward with the amended indictment (app. 50).

The PCR court found the petitioner failed to meet his burden of proof on his claim that plea counsel was ineffective for failing to properly advise him about the amendment of the indictment:

> At the guilty plea hearing, the assistant solicitor noted indictment 2010-GS-23-7946 should have been amended to read First Savers Bank as the location, not Wachovia. Plea counsel testified he was aware this amendment would take place. (Plea transcript, pp. 7–9). The Applicant did not tell the plea judge he had any problems with the amendment of the indictment. (Plea transcript, p. 11). This Court finds plea counsel properly explained the amendment issue to the Applicant. Plea counsel told the plea judge they had previously discussed the issue and the Applicant indicated he did not have a problem with the indictment. (Plea transcript, p. 11). The plea transcript, therefore, refutes the Applicant's claim. *See Stalk v. State*, 375 S.C. at 300, 652 S.E.2d at 407. Further, this Court notes indictments are merely notice documents and it is clear from plea counsel's testimony that he was on notice that this amendment would take place. *See State v. Gentry*, 363 S.C. 93, 102, 610 S.E.2d 494, 500 (2005).

(App. 65–66).

The PCR court's conclusion is based, in part, on factual and credibility determinations that are entitled to deference in this action. *Cagle v. Branker*, 520 F.3d 320, 324 (4th Cir. 2008) (citing 28 U.S.C. § 2254(e)(1)) ("[F]or a federal habeas court to overturn a state court's credibility judgments, the state court's error must be stark and clear.")); *see also Marshall v. Lonberger*, 459 U.S. 422, 434 (1983) ("28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them."). The petitioner may overcome this presumption of correctness only by showing "'clear and convincing evidence to the

contrary.'" *Wilson v. Ozmint*, 352 F.3d 847, 858–59 (4th Cir. 2003) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 240 (2003)).

The record supports the PCR court's factual conclusions.  As the PCR court noted, plea counsel expressly indicated to the plea court that he and the petitioner had spoken about the amended indictment[6] (app. 11).  Additionally, the record does not show that the petitioner was surprised or confused by the amendment (app. 8–11).  Further, the petitioner affirmed that the recitation of the facts by the assistant solicitor was correct (app. 11).  Statements made during a guilty plea should be considered to have been conclusively established by the acceptance of the guilty plea, unless a petitioner presents valid reasons why he should be allowed to depart from the truth of his statements. *Crawford v. United States*, 519 F.2d 347, 350 (4th Cir. 1975), *overruled on other grounds by United States v. Whitley*, 759 F.2d 327 (4th Cir. 1985).  As argued by the respondent, the petitioner has shown no reason why he should be able to depart from the truth of his statements at his guilty plea.  As the PCR court concluded, he failed to meet his burden of showing plea counsel's performance was deficient in this regard.

The PCR court also found that the petitioner failed to show prejudice, particularly since an indictment is merely a notice document, and the petitioner was clearly on notice about the charges.  The petitioner now claims that false and misleading statements were presented to the grand jury (doc. 1 at 5), but there is no support for that claim in the record.  While the initial indictment indicated the wrong bank (Wachovia) and, therefore, did contain a false statement, that indictment was amended to correct the error, and the amended indictment was true-billed by the grand jury in December 2011 *(*app. 76).

---

[6]  The respondent notes that plea counsel's testimony at the PCR hearing about whether he and the petitioner discussed the amended indictment before the hearing differs from what counsel told the plea court.  However, counsel had not been able to review the petitioner's case file prior to the PCR evidentiary hearing (app. 47).  Thus, it appears the PCR court found plea counsel's statements to the plea court at the time of the plea to be more credible than his vague recollections at the PCR evidentiary hearing.

The petitioner has failed to establish either prong of *Strickland*, and the PCR court made reasonable factual findings and reasonably applied federal precedent in denying his contention that plea counsel was ineffective for failing to properly advise him regarding the amendment of the indictment to change the name of the bank from Wachovia Bank to First Savers Bank. Accordingly, the petitioner is not entitled to habeas relief on this issue, and summary judgment should be granted as to this portion of Ground One.

**Did Not Enter First Savers Bank**

As noted above, the petitioner alleges: "Never entered [bank] that I'm charged with: Never saw or shown indictment" (doc. 1 at 5). The respondent argues, generally, that to the extent the petitioner's federal ground for relief differs from the ground ruled upon by the PCR court and discussed above, it is procedurally barred (doc. 17 at 11, 14, 20).

At the petitioner's guilty plea, the prosecutor stated that the State was prepared to prove that, according to Bassler's testimony, she "went in the First Savers Bank to scope it out just like she did at the Arthur State Bank. She went back to the truck with this defendant, they started gearing up to rob the bank, and that's when the police arrived and apprehended both suspects" (app. 8). In his PCR application, the petitioner alleged as one of the grounds for relief, "Never entered bank that I'm charged with. Never saw or shown indictment. I've been charged with wrong bank!!!" (app. 21). The petitioner testified as follows in the PCR hearing:

> So, I was saying I didn't rob that bank or even enter that bank. And they said, Well, they switched it to the First Savers Bank. Because apparently while me and my co-defendant were separated, she had went into the First Savers Bank. Which I wasn't aware of at the time. And that would have came out if we went to trial. Because I would have testified to that. But what happened was they changed it from attempted robbery to bank robbery. I never entered that bank, I never robbed that bank.
>
> So, my whole grief with this whole thing is how am I in SCDC for robbing a bank that was never robbed? If we took the bank

> tellers or the bank president and they got on the stand right
> now and asked them if their bank was ever robbed, they would
> say no.

(App. 41).  The petitioner's plea counsel testified that he thought the State had a very good case, and if the petitioner went to trial, plea counsel believed the petitioner would be convicted (app. 47-48). Plea counsel further testified that he felt that the petitioner would be convicted of bank robbery, not just attempted bank robbery.  Plea counsel testified, "[E]vidence was such that the petitioner never went into a bank but that he was acting in concert with the co-defendant and that's what she was going to testify to" (app. 47).

In the order denying relief, the PCR court did not address the petitioner's particular argument that he never entered the First Savers Bank and that therefore his plea counsel should not have advised him to plead guilty to robbery of that bank.  As noted above, if the PCR court fails to address a claim as is required by South Carolina Code § 17–27–80, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP to preserve the issue for appellate review. *Marlar*, 653 S.E.2d at 267.  No such motion was made in this case.  In his *pro se Johnson* petition for writ of certiorari, the petition argued, in pertinent part:

> Mr. Chambers failed to provide the effective assistance of counsel in . . . failing to provide competent legal advice in not informing Petitioner that the State could not prove the elements of the indicted offense in Indictment 2010-GS-23-7946, App. 76-77, and that counsel could either move to quash the indictment or inform Petitioner that he had a viable defense. The indictment in question charges a violation of S.C. Code of Laws § 16-11-380.  The elements of [this section] read:
>
> > A person commits the crime of entering a bank with intent to steal when he:
> >
> > a. *enters* a building or part of a building occupied as a bank, depository, or building and loan association;
> > b. *with intent to steal*
> > c. money or securities for money
> > d. by force, intimidation, or threats.

18

> Petitioner submits that Mr. Chambers failed to advise that the State could not prove the elements of subsections "a" and "b" above.

(Doc. 17-8 at 12 (emphasis in original)).

The petitioner attempts to overcome the procedural default by arguing that the ground was not preserved due to the ineffective assistance of PCR counsel (*see* doc. 1 at 5 ("The Petitioner's post conviction counsel did not submit a 59(e) motion.")).  The respondent argues generally that, to the extent the petitioner's claim differs from the one ruled upon by the PCR judge, it is procedurally barred, and the petitioner's argument that the ineffective assistance of PCR counsel serves as cause to overcome the procedural default "is insufficient . . . as the petitioner cannot 'demonstrate that the underlying ineffective-assistance of trial counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit.' *Martinez*, 132 S. Ct. at 1318." (doc. 17 at 11-12). However, the respondent does not specifically address why this portion of the petitioner's claim (that he did not enter First Savers Bank and therefore plea counsel was ineffective in advising him to plead guilty to robbery of that bank) lacks merit (*see* doc. 17 at 11-21).  Accordingly, the undersigned recommends that the respondent's motion for summary judgment be denied as to this portion of the petitioner's ground for relief.  The undersigned further recommends that the respondent be allowed to file a motion for summary judgment specifically addressing this issue.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, it is recommended that the respondent's motion for summary judgment (doc. 16) be granted as to the portion of the ground for relief that was addressed by the PCR judge and denied at this time as to the procedurally defaulted portion of the ground for relief.  It is further recommended that the respondent be given the opportunity to file a motion for summary judgment addressing the petitioner's argument that PCR counsel's ineffectiveness in failing to preserve the issue

serves as cause to overcome the procedural default, as discussed above. The attention of the parties is directed to the notice on the next page.

s/ Kevin F. McDonald
United States Magistrate Judge

January 25, 2016
Greenville, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (*quoting* Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk of Court**
**United States District Court**
**300 East Washington Street — Room 239**
**Greenville, South Carolina 29601**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).